## Case No. 9,862.

**MORSE FOUNTAIN PEN CO. v. ESTER-BROOK STEEL PEN MANUF'G CO.**

[3 Fish. Pat. Cas. 515.] [1]

Circuit Court, D. New Jersey.    March, 1869.

INJUNCTION — PRELIMINARY — ADMISSION BY DE-FENDANT—PATENTS—INFRINGEMENT—ESTOPPEL.

1. A verbal admission of infringement, and a promise to desist, is a strong circumstance against the defendant upon a motion for a preliminary injunction.

2. In the case of simple mechanism, a bare inspection is sufficient upon the question of infringement presented upon a motion for preliminary injunction.

3. The grant of a subsequent patent serves merely to indicate the opinion which highly respectable officers had formed on an ex parte examination of the subject. If the infringement be clear, an injunction should be granted, notwithstanding such patent.

4. Where defendants were making a pen which was afterward patented, and which, in their answer, they declared to be a new and useful improvement in the art of making pens known or existing at and prior to the invention thereof by the patentee, and where the complainant's pen and the defendants' pen were substantially the same: *Held*, that the defendants were estopped by their answer from averring by affidavits that pens substantially the same as their own or the complainants', had been made before the invention of either.

In equity. This was a motion for a provisional injunction to restrain the defendants from infringing letters patent [No. 73,255] for an "improvement in pens," granted to William A. Morse, January 14, 1868, and assigned to complainants. The invention consists in making the pen in two parts, consisting of a shank to fit the pen-holder, with a projecting tongue which unites it with the other portion of the pen containing the point. The union is formed by passing the tongue of the first part through a loop in the second, and then curving the end so as to form a chamber for the retention of a supply of ink. The claim of the patent was as follows: "I claim a fountain union pen made of two parts, A C and F, the same being adjustable and connected substantially as described and shown for the purpose specified."

J. B. Dayton and Henry Baldwin, Jr., for complainants.

Jonathan Marshall and George Harding, for defendants.

FIELD, District Judge. This is an application for a preliminary injunction to restrain the infringement of a patent for an improved fountain pen. The bill is in the usual form, setting forth the issuing of the patent, use and exclusive possession; and the infringement. It is sworn to by William A. Morse and Semmy Rosenthal, who compose the Morse Fountain Pen Company. Morse being the original patentee, and Rosenthal having acquired an interest in the patent to the ex-

1 [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

tent of one-half, by assignment. Two affidavits have also been produced and read on the part of the complainants, in support of the application. One is by William A. Morse, the patentee. He states, among other things, that when he applied for his patent, he was familiar with the various kinds of steel pens in the market, and that there was not to his knowledge any such thing as a fountain pen amongst them. That when he put his pen into the market, he found the usual difficulty in introducing a novelty, but had gradually overcome it, and that now the demand for his pens was large and steadily increasing, and they had become a regularly recognized article in the stationers' trade. That in July, 1868, he first encountered a pen which he plainly saw to be a mere imitation of his patented pen; that upon inquiry he learned that it came from the Esterbrook Factory, at Camden, New Jersey. That he promptly wrote to them that the pen they were manufacturing was an infringement upon his patent, and unless they desisted from making it he would commence suit against them; that thereupon Mr. Richard Esterbrook, Sen., came over to Philadelphia to see him, and after examining his letters patent said it was plain to him that the pens they were making were an infringement of that patent, and that they would make no more of them unless Mr. Goodspeed, for whom they made them, would obtain a license from him, and that they would write to Mr. Goodspeed to that effect; that after this interview the defendants ceased making these pens; that it was not until November, 1868, that deponent became aware they had resumed the manufacture of them; that he again wrote to them to the same effect that he had done in July, and that the only answer he received was one stating that they were manufacturing those pens for Mr. Goodspeed, of New York, and that he had indemnified them, and that the question of infringement, therefore, was one with which they had nothing whatever to do. The other affidavit is by John Turner. He says he is one of the firm of Warrington & Co., steel pen manufacturers, Philadelphia; that he has been a pen-maker in England and in this country for about thirty years; that he has examined the letters patent granted to William A. Morse, January 14, 1868, for an improvement in pens, and believes he understands the invention therein described and specified; that he has also examined the two pens annexed to his affidavit and marked "Goodspeed's Fountain, No. 1 Patent," and "Goodspeed's Fountain, No. 2 Patent," and is of opinion that these two pens embody the improvement described and specified in Morse's said patent, each of them being a fountain pen, consisting of two parts, one of which parts is an ordinary pen, provided with slots or perforations, and raised edges to such slots so as to hold and retain the other part, which other part serves to retain the ink, or acts as a fountain, and is adjusta-

ble in the slots, all substantially as described in said letters patent; that his firm was at one time employed in manufacturing Goodspeed's pens, but being notified that such pens were an infringement of Morse's patent, and that they were liable to prosecution therefor, they examined the matter, and being satisfied that such pens did infringe Morse's patent, they advised Mr. Goodspeed that they could not make any more of them, and discontinued making them accordingly.

Thus a very clear and strong case for an injunction has been made by the complainants. Has this been overcome by the affidavits which have been produced upon the part of the defendants? It has first been attempted to neutralize the effect of the affidavits of Morse and Turner, to which I have referred. For this purpose an affidavit of Richard Esterbrook, Senior, has been offered. He does not deny any of the statements made by Morse, in his affidavit, but says, when he expressed the opinion that the pen the defendants were making for Goodspeed, was an infringement of the Morse patent, he was under the impression that the complainants had a patent for the pen which was exhibited to him by Morse, and marked "Morse Fountain Pen Co., Patented January 14, 1868," but he has since "learned that the complainants have no patent for such pen." How or when he learned this fact he does not say; nor does he explain how or in what respect the pen so exhibited to him, differs from the pen patented by Morse. He also states, that at the time when this conversation with Morse took place, the pen, which he was manufacturing for Goodspeed, and to which reference was made, was marked "Goodspeed's Golden Pen, No. 1," and was like the one attached to his affidavit. Now does he mean to say that the pen which he is now making for Goodspeed, differs materially from the one he was then making, and that although the former was an infringement of the complainants' patent, the latter is not? He does not say so expressly, but this would seem to be a fair inference from his language. Unless he means this, I do not see the force or bearing of this part of his affidavit. But if this be his meaning, where is the evidence that the pens he was then making for Goodspeed, differ in any essential respect from those he is now making. And if this is what he means to say now, why was no reference to this fact made in his letter to the complainants of the 12th of February, 1869. It would have been so easy and so natural for him to have said, "the pens I am now making for Goodspeed are not the same as those I formerly made, and I do not consider them an infringement of your patent." But instead of saying this, or anything like it, he puts himself entirely upon the ground that as the defendants were manufacturing for Goodspeed, and were indemnified by him, they had no interest in the question of infringement.

The fact then sworn to by Morse stands uncontradicted, that Esterbrook, in July last, after examining Morse's letters patent, did admit that the pens that the defendants were then manufacturing for Goodspeed, were an infringement of that patent, and that he promised to desist from making them. And the attempt he now makes to break the force of this admission is certainly not a very successful one. When he made this admission, he was manufacturing pens for Goodspeed, and his interest would have made him desire to reach a different conclusion. At that time he could have had no doubt whatever upon the subject. His attention was particularly called to the matter; he examined the letters patent of Morse, and said it was clear the pens he was making were an infringement of that patent. Had his opinion undergone any change as late as the 12th of February, when he wrote the letter annexed to Morse's affidavit, and after he had resumed the manufacture of pens for Goodspeed? Certainly, if it had, he would have said so. The only reason he assigned for making these pens, after he had promised he would discontinue to do so, was that Goodspeed had indemnified him. It is but fair to presume he had no other.

Then we have another affidavit of John Turner, the same witness whose affidavit of February 24, 1869, was produced by the complainant. His first affidavit, as we have seen, was very full and explicit. He not only expresses a decided opinion that Goodspeed's pens are an infringement of the Morse patent, but he assigns such reasons for that opinion, that it is manifest he perfectly understood the nature and extent of Morse's patent, and the invention therein described, and that Goodspeed's pens did embody the same improvement therein specified. Now, he says that the pen referred to in his former affidavit, and which he concluded infringed Morse's patent, was a pen similar to the one attached to his second affidavit, and marked. Goodspeed's pen. The same remark that was made as to Esterbrook's affidavit applies to this. If it means anything to the purpose, it means that the pens which the defendants are now making for Goodspeed, are essentially different from those which the firm of Warrington & Co., of which Turner was a member, were making at the time referred to in his affidavit. But there is no evidence to show that this is the case. At all events, he has not attempted to explain wherein that difference consists. There is, I think, therefore, in this affidavit nothing to weaken the force of the clear and positive statement made by him in his former one.

A number of other affidavits have been read on the part of the defendants; it is not necessary to go into a detailed examination of them. One of them is by Goodspeed, who although not nominally a party to this suit, yet is virtually the defendant. The others are by men who represent themselves to be

penmakers, and who certainly express the opinion that the pens which the defendants are manufacturing for Goodspeed, are no infringement of Morse's patent. Edward Smith, for instance, says, that he has read a certified copy of the letters-patent granted to Morse; that he has also examined the pen marked "Goodspeed's Fountain, No. 1 Patent," and is of opinion that this pen does not embody the improvements described and specified in said letters-patent. And yet this witness is one of the firm of Warrington & Co., who were at one time employed in making pens for Goodspeed, but who, as Turner states, upon being satisfied that these pens were an infringement of Morse's patent, advised Mr. Goodspeed that they could not make any more of them. But the answer to all these affidavits is, that we have the pens before us, and can examine and compare them. And, although no doubt there are cases where such a comparison would involve more than the usual amount of mechanical knowledge, and might not therefore be satisfactory, yet it appears to me that in a matter so simple as this, a bare inspection of the pens patented by the complainants, and made by them, and the pens manufactured by the defendants, must be sufficient to satisfy any one that they are substantially the same pens. They may vary in form. The pen made by the defendants may in some respects be a better pen than that made by the complainants, but it embodies the same improvement as that described and specified in Morse's patent. What is this improvement? It is a fountain pen, which will hold a larger quantity of ink than pens formerly in use. It consists of two parts, one of which is an ordinary pen, provided with slots or perforations, and raised edges to such slots so as to hold the other part, which other part serves to retain the ink and acts as a fountain, and is adjustable in the slots. The invention, as described in the specifications, is not confined to this particular form of connecting the two parts, but it consists of a fountain union pen, made in two parts, the same being adjustable, and connected substantially as therein specified. Now where is the difference between the pen patented by the complainants, and described in the specification, and that made by the defendants? I can see none. Whether the fountain part or reservoir attachment is applied to the inside of the pen or to the back of it, can make no essential difference; for, as we have seen, the invention is not confined to any particular form of connecting the two parts. The variations between them are in form only, and not in substance. The improvement embodied in both is the same.

But it is said that Goodspeed has applied for a patent for his pen, and we have the affidavit of Mr. Frazer, who states that he has been employed by Goodspeed to obtain letters patent for his improvement on fountain pens; that the application was filed in the patent office on the 10th of June, 1868; that it was partially allowed on the 24th of that month; that it has since been pending in appeal until the 25th of February, when the patent was fully allowed, and went to issue; and that he is informed by the proper official clerk of the patent office, that the said patent will issue and bear date on the 9th day of March, instant. But suppose the patent had already been issued to Goodspeed; as said by Judge Kane, in case of Wilson v. Barnum [Case, No. 17,787], the grant of a subsequent patent serves merely to indicate the opinion which highly respectable officers had formed on an ex parte examination of the subject, but was not conclusive, or even prima facie evidence. In that case, the judge being well satisfied of the fact of infringement, granted an interlocutory injunction, although a majority of the experts examined thought there was no infringement.

Let an injunction issue until the further order of the court.

A motion to dissolve the injunction was subsequently argued, which was denied in July, 1869. The opinion of the court was in substance as follows:

FIELD, District Judge. In the case of Morse Pen Co. v. Esterbrook Steel Pen Manufacturing Co., the motion to dissolve the injunction is denied. I have decided the case upon this point. In granting the injunction, I hold, that the pen patented by Morse was substantially the same pen with that which the defendants were manufacturing for Goodspeed. I may have been mistaken in that opinion, but I still adhere to it. If that opinion be correct, of course the motion to dissolve must be denied. For the answer of the defendants avers that Goodspeed has obtained a patent for the pens which the defendants were manufacturing for him, and that such pens were a new and useful improvement in the art of making pens, known or existing at and prior to the invention thereof by Goodspeed. If this be so, then the Goodspeed pen is a substantially different pen from that referred to in the affidavits read upon the part of the defendants. If the pen then patented by Morse be substantially the same pen as that which the defendants were making for Goodspeed, and for which he has obtained a patent, the defendants are precluded from averring that it is the pen referred to in the affidavits.